IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| COYITA VONCILE THOMAS, ) | Case No. 03-47241-drd |
| Debtor. ) | Adv. No. 04-4014-drd |
| _____ ) | |
| ) | |
| COYITA VONCILE THOMAS, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MONEY MART FINANCIAL ) | |
| SERVICES, INC., ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the Court on the Complaint for Violation of the Automatic Stay pursuant to 11 U.S.C. § 362, for an Injunction to Cease Collection Activities, and for Contempt and Sanctions (the "Complaint") filed by Coyita Voncile Thomas ("Debtor") against Money Mart Financial Services, Inc. ("Money Mart").  In the Complaint, Debtor asserted that Money Mart violated the automatic stay by cashing post-dated checks after she filed her bankruptcy petition.  Debtor asserted that Money Mart's violation of the stay resulted in actual damages to her in the amount of $699.20 and that she should also be awarded punitive damages because the violation of the automatic stay by Money Mart was willful. Money Mart's Answer to Debtor's Complaint contended that cashing Debtor's post-dated checks subsequent to her filing bankruptcy was excepted from the automatic stay pursuant to § 362(b)(11).  The Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b). This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. § 157(b)(2)(A).

## I. BACKGROUND

On November 15, 2003, Debtor obtained four separate "payday loans" from Money Mart in the amount of $50.00 each, for a total of $200.00[1]. In exchange for $200 cash, Debtor gave Money Mart four post-dated checks, each in the amount of $77.00, that Money Mart was to cash when the loans came due on December 15, 2003. On November 18, 2003, Debtor filed a Chapter 7 bankruptcy petition.[2] On that same date, Debtor's counsel sent to Money Mart via facsimile a copy of the Notice of Bankruptcy filing and petition.[3] Money Mart also received a Notice of Commencement of Debtor's Chapter 7 filing from the bankruptcy court clerk on or about November 20, 2003.[4]

On or about December 17, 2003, Money Mart presented Debtor's four post-dated checks to Debtor's bank. The checks were honored by Debtor's bank on or about December 17, 2003, and $308.00 was transferred to Money Mart from Debtor's checking account.[5] Subsequently, Debtor filed the Complaint seeking damages from Money Mart for violation of the automatic stay.

---

[1] Money Mart Exs. 1-4; The parties dispute whether the loans were renewals of previous loans or new loans but that is irrelevant to the issue at hand.

[2] Debtor Ex. A.

[3] Debtor Ex. A.

[4] Money Mart Answer, ¶ 3.

[5] Debtor Ex. B.

## II.  DISCUSSION AND ANALYSIS

### A.  Violation of the Automatic Stay

Section 362(a) of the Bankruptcy Code provides that a petition filed under § 301 operates as a stay, applicable to all entities, of, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."  11 U.S.C. § 362(a)(3) & (6).  Section 362(b) contains several exceptions to the automatic stay, including § 362(b)(11) which provides that "[t]he filing of a petition under section 301. . . of this title. . . does not operate as a stay under subsection (a) of this section, of *the presentment of a negotiable instrument* and the giving of notice of and protesting dishonor of such an instrument."  11 U.S.C. § 362(b)(11) (emphasis added).  There is no question that Money Mart's action in processing the checks after the filing in order to obtain payment on its pre-petition loans to Debtor is encompassed by the prohibitions contained in § 362(a).  The question is whether § 362(b)(11) operates to except its action from those prohibitions.

To interpret the meaning of § 362(b)(11), the Court must rely on the plain language of the statute, unless that language is ambiguous.  *See Lamie v. United States Trustee,* 124 S. Ct. 1023, 1030 (2004);  *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000);  *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989).  As the language of the exception makes clear, it contains several elements.  The creditor must hold a "negotiable instrument" and the act in question must constitute "presentment" of that instrument.  These terms are terms of art in commercial law and are defined by the Missouri version of the Uniform Commercial

3

Code. Accordingly, the Court looks to that law to ascertain the meanings of these terms and phrases.

Missouri law defines a "negotiable instrument" as

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Mo. Rev. Stat. § 400.3-104(a) (1994). Clearly, the post-dated checks that Debtor tendered to Money Mart are negotiable instruments under § 400.3-104(a). Debtor also concedes this fact in her post-trial brief.

The Court must next determine whether the term "presentment", as used in § 362(b)(11), applies to the actions of Money Mart. Missouri law defines "presentment" as "a demand by or on behalf of a *person entitled to enforce* an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee." Mo. Rev. Stat. § 400.3-501(a) (emphasis added). The Uniform Commercial Code specifically defines "person entitled to enforce" an instrument as, among other things, "the holder of the instrument." *See* Mo. Rev. Stat. § 400.3-301.[6] Because Money

---

[6]The full text of the definition, set forth in Mo. Rev. Stat. § 400.3-301 reads as follows:

> "**Person entitled to enforce**" an instrument means (i) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 400.3-309 or 400.3-418(d). A person may be a person entitled to

Mart was the holder of the instruments, i.e., the post-dated checks, Money Mart was "entitled to enforce" the instruments pursuant to § 400.3-301. Accordingly, Money Mart made presentment of the instruments, pursuant to Missouri law and § 362(b)(11), by making a demand on Debtor's bank to pay the checks.

In concluding that Money Mart's actions do not violate the automatic stay, this Court sides with a number of others that have held that the presentment of post-dated checks after the filing of a petition is protected by the provisions of § 362(b)(11). *See, e.g., Roete v. Smith (In re Roete)*, 936 F.2d 963, 966 (7th Cir. 1991)[7]; *Franklin v. Qwik Cash of Martin (In re Franklin)*, 254 B.R. 718, 720 (Bankr. W.D. Tenn. 2000); *Wittman v. State Farm Life Ins. Co., Inc. (In re Mills)*, 167 B.R. 663, 664 (Bankr. D. Kan. 1994), *aff'd,* 176 B.R. 924 (D. Kan. 1994); *In re Figueira*, 163 B.R. 192, 195 (Bankr. D. Kan. 1993).

In support of her contention that Money Mart violated the stay by presenting the check under the circumstances of this case, Debtor cites *In re Hines*, 198 B.R. 769 (B.A.P. 9th Cir. 1996) and *In re Zapanta*, 204 B.R. 762 (Bankr. S.D. Cal. 1997). In *Hines*, after the filing of the debtor's bankruptcy case, debtor's former counsel deposited a post-dated check for fees received from the debtor prior to the filing. The Bankruptcy Appellate Panel held that the obligation created by the

---

enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

[7]Debtor attempts to distinguish *Roete* on the grounds that the version of the Uniform Commercial Code interpreted in that case did not contain the qualification that a person making the demand constituting presentment be one "entitled to enforce" an instrument. While that may be true, as the Court notes elsewhere in this opinion, given the way that phrase is defined in Mo. Rev. Stat. § 400.3-301, it does not exclude Money Mart and therefore does not change the outcome.

retention agreement was a dischargeable prepetition claim and that the act of presenting the check post-petition was not excepted from the automatic stay under § 362(b)(11).  On the latter point, the court held that although the check was a negotiable instrument, counsel was not a "person entitled to enforce" the instrument, within the definition of presentment, because the obligation on the instrument would be subject to the defense of the debtor's discharge in bankruptcy, pursuant to § 3-305(a)(1).[8]  In *Zapanta*, the bankruptcy court, relying primarily on the holding in *Hines*, in a very similar case, held the exception inapplicable, observing that although no discharge had yet occurred at the time of the presentment of the check, the obligation represented by the instrument was nonetheless subject to discharge.  Relying upon these authorities, Debtor asserts that because, pursuant to Mo. Rev. Stat. § 400.3-305(a)(1)(iv), enforcement of the obligation on the instrument is subject to the defense of discharge in insolvency proceedings, Money Mart was not a "person entitled to enforce" an instrument and therefore also not entitled to the protection of § 362(b)(11).

The Court declines to follow these cases for several reasons.  First, both courts overlooked the fact that the specific phrase "person entitled to enforce" an instrument incorporated in the definition of presentment is itself defined in § 3-301 and that definition does not incorporate the concept of defenses to the obligation.  The definition contained in § 400.3-301 does not require that the instrument be free of defenses in order for the person holding it to be one "entitled to enforce" it.  Neither the broader definition of presentment in § 400.3-501(a) nor the formulation of the stay exception in § 362(b)(11)

---

[8]The decision of the Bankruptcy Appellate Panel was reversed, *see Gordon v. Hines (In re Hines),* 147 F.3d 1185 (9th Cir. 1998), on the grounds that the claim of counsel against the debtor was not a prepetition debt subject to discharge.  Because it resolved the case on that ground, the 9th Circuit made no ruling on the applicability of the exception embodied in § 362(b)(11).

6

contain such a requirement. This Court will not engraft one into the statute. The apparent function of the definition in § 3-301 for purposes of its use in the definition of presentment is to identify and describe the persons entitled to assert rights in the instrument, rather than the circumstances in which they are entitled to do so. Section 400.3-305(a)(1)(iv), however, operates in a different context – to give the debtor the defense of discharge in bankruptcy if sued on the instrument; it has no bearing on the concept of presentment. The interpretation adopted in *Hines* and *Zapanta* seems to this Court to confuse the concepts of presentment and the ultimate enforceability of the obligation represented by the instrument. Money Mart was a holder of a negotiable instrument and made demand on the drawee bank for its payment. Under those circumstances, it was, under the applicable statutory definitions, a person entitled to enforce the instrument and made presentment of the instrument entitling it to invoke the exception contained in § 362(b)(11).

The Court also declines to follow the holdings in *Hines* and *Zapanta* for the reason that doing so would render the statutory exception virtually meaningless. At the time of the presentment of the instrument, Debtor had not yet received her discharge in bankruptcy. After the entry of a discharge, she would be protected by the injunction contained in 11 U.S.C. § 524(a) and the defense embodied in Mo. Rev. Stat. § 400.3-305(1)(a)(iv). The automatic stay, designed to protect debtor from certain actions after the filing, expires on the entry of a discharge. 11 U.S.C. § 362(c). While in effect, that section prevents certain creditor action, however, § 362(b) was intended to permit the holder of a negotiable instrument to present the instrument after filing without violating the automatic stay. The exception, however, is rendered without effect if the holder is disqualified from making presentment because of the debtor's anticipated defense on the instrument based on a discharge in bankruptcy

7

which has not yet taken place. The result of incorporating the obligor's defense into the concept of presentment and importing that into the Code renders the exception self-defeating and inoperative. The Court declines to adopt an interpretation of this exception to the stay which would render it essentially nugatory.

### B.  Avoidance of the Transfers

The determination that Money Mart did not violate the automatic stay by presenting Debtor's post-dated checks for payment does not end this Court's inquiry. Section 362(b)(11) does not authorize any transfer of estate property, it merely permits the presenter's performance of an act that would otherwise be a stay violation. *See Steege v. AT&T (In re Superior Toy & Mfg. Co., Inc.)*, 183 B.R. 826, 837 (Bankr. N.D. Ill. 1995); *see also, Wittman*, 167 B.R. at 664 (holding that although not a stay violation, presentment does not carry with it a right to have the instrument honored; 362(b)(11) merely allows for presentment of a check without violating the stay).

Section 549(a) provides that:

> . . . the trustee may avoid a transfer of property of the estate-
> (1) that occurs after the commencement of the case; and
> (2) (A) that is authorized only under section 303(f) or 542(c)[9] of this title; or
>     (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). Section 522(h) gives debtors the power to avoid post-petition transfers of

---

[9]  11 U.S.C. § 542(c) provides that "an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced." This section is intended to protect the intermediary bank that, without knowledge of the bankruptcy, honors the presentment of a check made by a debtor. *See Wittman*, 176 B.R. at 928.

property pursuant to § 549 if "such transfer is avoidable by the trustee" and "the trustee does not attempt to avoid such transfer." 11 U.S.C. § 522(h)(1) & (2); *see also, Franklin*, 254 B.R. at 721 n. 2.[10] Although not specifically asserted in Debtor's Complaint, the issue was raised at trial and Money Mart volunteered to turn over the funds it received from Debtor's post-dated checks to Debtor. The trustee has not attempted to avoid the post-petition transfer of funds to Money Mart. Thus, the Court finds that Debtor may properly seek avoidance of the post-petition transfers to Money Mart.

Checking account balances become "property of the estate" on the date the bankruptcy petition is filed. *See* 11 U.S.C. § 541(a); *Franklin*, 254 B.R. at 721. The Supreme Court has held that a "transfer" for the purposes of payment by ordinary check occurs on the date of honor, and not before. *Barnhill v. Johnson*, 503 U.S. 393 (1992). Thus, Debtor's checking account balance became "property of the estate" of November 18, 2003, the date Debtor filed her bankruptcy petition. The checks were honored by Debtor's bank on or about December 17, 2003.[11] Accordingly, pursuant to § 549(a), a post-petition transfer occurred on that date. A post-petition transfer that is authorized only under § 542(c) may be avoided pursuant to § 549(a). This transfer was authorized only under 542(c) which protects a drawee who in good faith honors the check and pays with funds from the debtor's

---

[10]Section 522(h) requires that the property involved in the transfer which Debtor seeks to avoid be subject to exemption. The Court notes that the Debtor claimed her bank account balance as exempt, pursuant to Mo. Rev. Stat. § 513.430(3) on Schedule C of her Schedules of Assets and Liabilities. Although the amount stated there is less than the amount of the post-dated checks given to Money Mart and the Debtor exempted certain other items under this same subsection, Debtor would appear to be able to amend to exempt this additional sum without exceeding the limitations of that exemption provision.

[11] Plaintiff's Ex. B.

account.[12]  *See* 11 U.S.C. § 542(c); *see also, Wittman*, 176 B.R. at 928.  Thus, pursuant to § 549(a), the post-petition transfer of Debtor's funds in the amount of $308.00 is avoidable and Money Mart must return the funds to Debtor.[13]

Because the Court determined that Money Mart did not violate the automatic stay, the issue of further compensatory and punitive damages against Money Mart is moot.

### III.  CONCLUSION

For the reasons stated above, the Court finds that Money Mart did not violate the automatic stay.  However, the Court further finds that the post-petition transfer of funds to Money Mart is avoidable pursuant to § 549(a) and Money Mart shall return the amount of $308.00 to Debtor.

The foregoing constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.  A separate order will be entered as required by Rule 9021.

/s/ Dennis R. Dow
Bankruptcy Judge

Date: June 14, 2004

Copies to:

Tracy L. Robinson
Christopher J. Hanson
Stephanie G.  Hazelton

---

[12] As discussed above, § 362(b)(11) does not authorize a post-petition transfer, but only the presentment of a check post-petition without violation of the stay.

[13] If necessary, Debtor should amend her schedules to reflect this asset.